**Petition for Writ of Mandamus Granted and Opinion filed November 21, 2025.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-25-00088-CV

_____

### IN RE ASTRAZENECA PHARMACEUTICALS LP, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**71st District Court**
**Harrison County, Texas**
**Trial Court Cause No. 22-0246**

---

## OPINION

AstraZeneca Pharmaceuticals LP seeks mandamus relief from an order denying its motion to transfer venue from Harrison County to Travis County. We recently considered a similar original proceeding brought by a different pharmaceutical company seeking to enforce the mandatory venue provision contained in the Texas Health Care Program Fraud Prevention Act. *See In re Sanofi-Aventis U.S. LLC*, 711 S.W.3d 732 (Tex. App.—15th Dist. 2025, orig. proceeding).

Because our decision in *Sanofi-Aventis* controls the venue dispute here, and because there is no jurisdictional, equitable, or other impediment that compels a different result, we conditionally grant AstraZeneca's petition.

## BACKGROUND

Real Parties in Interest SCEF, LLC and Lynne Levin-Guzman filed the underlying qui tam action on behalf of the State of Texas in 2022 in Harrison County. They alleged that AstraZeneca violated what was then called the Texas Medicaid Fraud Prevention Act[1] by engaging in three unlawful kickback schemes involving exchanges, or at least offers, of remuneration to induce providers to prescribe AstraZeneca products. In the first scheme, AstraZeneca allegedly "contracted with and paid remuneration to third parties … to deploy white coat nurses … to recommend and influence prescriptions of" AstraZeneca products. In the second scheme, AstraZeneca allegedly provided free nurse services aimed at inducing prescribers to recommend AstraZeneca products to their patients. And in the third scheme, AstraZeneca allegedly provided "in-kind remuneration in the form of reimbursement support services" to induce prescribers to recommend AstraZeneca products.

Real Parties included a single paragraph on venue. They acknowledged that under § 36.052(d) of the Texas Human Resources Code a lawsuit filed under the TMFPA had to be brought in either Travis County or "a county in which any part of the unlawful act occurred."[2] They alleged that "[u]pon information and belief, venue is proper in Harrison County because Astra's unlawful acts occurred, in part, in Harrison County."

---

[1]    The Legislature later changed the name to the Texas Health Care Program Fraud Prevention Act (THFPA). *See* Act of May 16, 2023, 88th Leg., R.S., ch. 273, § 2, 2023 Tex. Gen. Laws 584, 584.

[2]    *See* TEX. HUM. RES. CODE § 36.052(d).

2

After the State declined to intervene, Real Parties served AstraZeneca, which filed a motion to transfer venue. AstraZeneca specifically denied "that any of the alleged unlawful acts occurred in Harrison County" and argued that venue was thus mandatory in Travis County. Real Parties then filed a first amended petition that added a second paragraph of venue allegations. In that paragraph, Real Parties alleged that AstraZeneca "sales and marketing reps targeted providers affiliated" with several health care facilities located in Marshall, Texas "using the unlawful marketing schemes."[3]

AstraZeneca followed Real Parties' amended petition with another motion to transfer venue in which it again specifically denied that venue is proper in Harrison County. AstraZeneca also argued that Real Parties' new venue allegations are "untethered" to the alleged kickback schemes because the kickback allegations involve nurses but the venue allegations involve "sales and marketing reps."

Real Parties filed a response to AstraZeneca's transfer motion and, alternatively, a conditional motion for continuance and venue discovery "[i]f the Court is not inclined to deny the Venue Motion outright." They argued that the motion should be denied because the amended petition alleged that AstraZeneca had offered the "nursing and support services at issue" "through its sales and marketing reps" and "to *all* U.S.-based Prescribers, including those in Harrison County." Real Parties also contended that the same offers were made "through [AstraZeneca's] public websites." Real Parties supplemented their response by alleging as an additional ground that venue is proper in Harrison County because a clinic in Marshall had brochures for Fasenra, a product manufactured by AstraZeneca. According to the supporting affidavit of Kristin Burgess, a consultant for one of the law firms representing Real Parties, the brochure had a QR code that, when scanned,

---

[3]     Marshall is located in Harrison County.

linked to AstraZeneca's myaccess360.com portal. Real Parties argued that the website touts the same nurse and reimbursement support services that form the basis of their kickback allegations.

The trial court conducted a hearing on the motion to transfer venue before denying it on September 1, 2023. About 20 months later, on May 9, 2025, AstraZeneca filed a petition for writ of mandamus challenging the trial court's order denying its transfer motion. AstraZeneca made two observations in its statement of jurisdiction in this Court. First, this Court has jurisdiction over this original proceeding because, as we decided in *Sanofi-Aventis*, "a qui tam action qualifies as a suit by the State."[4] Second, the petition is timely because it was filed more than 90 days before trial is set to begin in December 2025.[5] Real parties filed a response, and a second amended petition that expanded upon the venue allegations in the first amended petition, both in number and in detail.[6]

## DISCUSSION

The statute at the center of this dispute is § 36.052(d) of the Human Resources Code. It provides that a THFPA action "shall be brought in Travis County or in a county in which any part of the unlawful act occurred." TEX. HUM. RES. CODE § 36.052(d). This is a mandatory venue statute, *see Sanofi-Aventis*, 711 S.W.3d at

---

[4]     711 S.W.3d at 737–38; *see* TEX. GOV'T CODE §§ 22.220(d)(1) (providing that this Court has exclusive intermediate appellate jurisdiction over "matters brought by or against the state"), 22.221(c-1) (providing that this Court's original jurisdiction "is limited to writs arising out of matters over which the court has exclusive intermediate appellate jurisdiction under Section 22.220(d)").

[5]     *See* TEX. CIV. PRAC. & REM. CODE § 15.0642 ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter … before the later of: (1) the 90th day before the date the trial starts; or (2) the 10th day after the date the party receives notice of the trial setting.").

[6]     The State filed a motion to intervene on July 8, 2025.

739, and "so it is enforceable by mandamus."[7]

Mandamus relief ordinarily requires the relator to establish "a clear abuse of discretion for which there is no adequate appellate remedy."[8] But an inadequate remedy need not be shown when, as here, a party seeks to enforce a mandatory venue provision.[9]

AstraZeneca argues that *Sanofi-Aventis* controls and requires mandamus because in that case we "granted mandamus on nearly identical venue allegations." Real Parties respond that the second amended petition mooted this original proceeding because AstraZeneca's petition challenges the now "null and void" venue allegations contained in the superseded first amended petition; that mandamus relief is barred by laches; and that the mandamus fails on the merits because the allegations contained in the second amended petition, and alternatively the first insofar as it is relevant, demonstrate that part of the alleged unlawful act occurred in Harrison County. AstraZeneca replies that the second amended petition is not before this Court and that laches does not bar mandamus relief.[10]

We hold that the trial court clearly abused its discretion by denying AstraZeneca's transfer motion, that this mandamus is neither moot nor barred by laches, and that remand for venue discovery is inappropriate under the circumstances.

## I.  The one-and-done rules governing venue

Because it is potentially jurisdictional and impacts the merits, we begin by addressing (1) whether we should consider the second amended petition filed after

---

[7] *In re Transcon. Realty Investors, Inc.*, 271 S.W.3d 270, 271 (Tex. 2008) (citing TEX. CIV. PRAC. & REM. CODE §§ 15.016, 15.0642; *In re TxDOT*, 218 S.W.3d 74, 76 (Tex. 2007)).

[8] *In re AutoZoners*, 694 S.W.3d 219, 223 (Tex. 2024).

[9] *Sanofi-Aventis*, 711 S.W.3d at 735; *see Transcon. Realty Investors*, 271 S.W.3d at 271.

[10] Real Parties filed a motion for leave to file a sur-reply. We grant the motion.

5

the motion to transfer venue was denied by the trial court; and (2) whether remand for further discovery is appropriate if we disagree with the trial court's order denying transfer. We address them together because both issues turn on the atypical rules governing venue litigation, rules stemming from the days when pleas of privilege governed venue before many of those currently in practice were born.

For more than a century, venue was decided by conducting full *trials* and *appeals* limited to venue and nothing else, resulting in an almost unbelievable spate of satellite litigation.[11] By the early 1980s, digests of venue opinions ran for "more than six hundred pages of annotations in the Texas statutes."[12] In reaction, the venue statutes and rules were amended forty years ago to provide that once a trial judge granted or denied transfer of venue, "no further motions to transfer shall be considered"—period.[13] Parties added later were out of luck: "no further motions" includes those who never had the chance because they were "added as a party subsequent to the venue proceedings."[14] Interlocutory appeals were expressly prohibited;[15] mandamus review was allowed ten years later, but only to enforce mandatory venue provisions.[16]

Under this one-and-done rule, a case must proceed all the way through trial

---

[11] *See generally* Garey B. Spradley, *Texas Venue: The Pathology of the Law*, 36 Sw. L.J. 645 (1982).

[12] *Id.* at 648.

[13] *See* TEX. R. CIV. P. 87(5) ("If venue has been sustained as against a motion to transfer, or if an action has been transferred to a proper county in response to a motion to transfer, then *no further motions to transfer shall be considered*") (emphasis added).

[14] *Id.* ("[N]o further motions to transfer shall be considered *regardless of whether the movant was a party to the prior proceedings* or was added as a party subsequent to the venue proceedings") (emphasis added).

[15] *See* Act of May 28, 1983, 68th Leg., R.S., ch. 385, §§ 1–3, 1983 Tex. Gen. Laws 2119, 2119–24; TEX. R. CIV. P. 87(6).

[16] *See* Act of May 8, 1995, 74th Leg., R.S., ch. 138, § 5, 1995 Tex. Gen. Laws 978, 981 (codified at TEX. CIV. PRAC. & REM. CODE § 15.0642).

and appeal before an initial venue order can be challenged:

> On appeal from the trial on the merits, if venue was improper it shall *in no event be harmless error* and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, *including the trial on the merits*.[17]

This is more than just "unique"; over thirty years ago the Texas Supreme Court called it "fundamentally flawed because it allows appellate review of venue on a basis different from that on which it was decided."[18] But it remains Texas law today.

This explains why we must reject Real Parties' two procedural alternatives. We cannot consider their second amended petition because the trial court could not consider it without effectively violating the no-rehearing rule. "[O]nly one venue determination may be made in a proceeding,"[19] and the trial court made that decision based on the allegations in their first amended petition. Similarly, their written motion for discovery and oral argument at the venue hearing were conditional, inviting the trial court to deny transfer and consider further discovery only if the court was inclined to transfer the case to Travis County.[20] When the trial court chose the first option and denied the motion to transfer, both that court and this Court lost the option of considering the second amended petition or remanding for further discovery. As the Texas Supreme Court held unanimously in 2023, "remand for further proceedings … is proper only when there is no probative evidence that venue was proper either in the county of suit or in the county to which transfer was

---

[17]      TEX. CIV. PRAC. & REM. CODE § 15.064(b) (emphasis added).

[18]      *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993).

[19]      *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008); *see* TEX. R. CIV. P. 87(5).

[20]      The motion: "if the Court is not inclined to deny the Venue Motion, Relators respectfully cross-move for a continuance and an order compelling venue discovery." The hearing: "We have pleaded more than enough facts for the Court to rule in our favor without discovery, but to the extent that the Court is not persuaded, we are entitled to discovery."

sought."[21] Since venue was proper in Travis County as a matter of state law, evidence yet to be obtained in discovery or at trial can only be considered on appeal after trial on the merits. Accordingly, we reject Real Parties' argument that their second amended petition moots this original proceeding, or that discovery should be allowed before this case proceeds to trial.

## II. Venue depends on evidence when the pleadings are disputed, and Real Parties presented no evidence of unlawful acts in Harrison County

Turning to the merits, we begin with *Sanofi-Aventis*, as it involved almost identical facts and claims. In that case, a pharmaceutical company was sued in Harrison County for violating the Texas Anti-Kickback statute as incorporated into the THFPA.[22] As in this case, the plaintiff alleged that Sanofi violated the THFPA "by offering remuneration in the form of free nurse services and reimbursement-support services to providers to induce prescriptions of Sanofi drugs."[23] After the company denied that venue was proper in Harrison County and moved to transfer venue to Travis County, the "sole proof" the plaintiff "supplied to support venue in Harrison County was a declaration from Kristen Burgess [the same affiant presented by Real Parties here], a nurse practitioner in Harrison County hired by [plaintiffs'] counsel as a consultant for purposes of this litigation."[24] Burgess declared (1) that "Sanofi's sales representatives regularly meet with medical providers in Harrison County to promote Sanofi's medications" and (2) that "she could access Sanofi's website, which contains an application for at least some of the services that [plaintiff] claims are unlawful."[25]

---

[21] *Fortenberry v. Great Divide Ins. Co.*, 664 S.W.3d 807, 811–12 (Tex. 2023).

[22] 711 S.W.3d at 735, 738; *see* TEX. HUM. RES. CODE §§ 32.039(b), 36.002(13).

[23] *Sanofi-Aventis*, 711 S.W.3d at 738.

[24] *Id.* 735, 739.

[25] *Id.* at 739.

We held that each ground was insufficient to establish venue in Harrison County. Burgess's declaration did not establish that any of the "white coat" nurses met with providers in Harrison County, and gave no details of what allegedly occurred at the meetings between sales reps and providers that related to the allegations in the plaintiff's pleadings.[26] We also disagreed that the ability to access Sanofi's website in Harrison County conveyed an "offer" as that term is used in the Anti-Kickback statute,[27] since the website *invited* applications rather than extending a *binding promise* that allowed readers to create a bilateral contract.[28] Giving the term its legal meaning, as the Legislature intended, there was "no evidence that anyone in Harrison County *received* or that Sanofi *promised* to provide free nurse services or reimbursement-support services in return for [simply] accessing Sanofi's website. At most, the patient services application on Sanofi's website constitute[d] a general invitation to apply for some of the challenged nurse services."[29]

*Sanofi-Aventis* compels the same result here.

AstraZeneca specifically denied that "any of the alleged unlawful acts occurred in Harrison County and that venue is proper in Harrison County." That put the burden on Real Parties "to present prima facie proof by affidavit or other appropriate evidence" that "at least a part of the unlawful acts it alleges [AstraZeneca] committed occurred in Harrison County."[30]

Real Parties asserted in the first amended petition that AstraZeneca "sales and marketing reps targeted providers" at two Harrison County clinics "using the

---

26      *Id.*

27      *Id.* at 739–40.

28      *See Campbellton Rd., Ltd. v. City of San Antonio*, 688 S.W.3d 105 (Tex. 2024).

29      *Sanofi-Aventis*, 711 S.W.3d at 740–41 (emphasis added).

30      *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999); *Sanofi-Aventis*, 711 S.W.3d at 739.

unlawful marketing schemes detailed herein." But they offered no affidavit or other evidentiary support for those allegations, including any "details of what allegedly occurred" during the targeting or "how [the targeting by sales and marketing reps] relate to the alleg[ed]" unlawful nursing and support services.[31]

Real Parties also argued in their opposition briefing that AstraZeneca "offered" the allegedly unlawful nursing and support services "through its public websites" because the websites tout the availability of those services.[32] This is the same error the plaintiffs made in *Sanofi-Aventis*. Although touting the *availability* of the services would seem to fall within the dictionary definition of "offer"—"to make *available*"—it falls outside the legal definition, which is what the Legislature had in mind when it used the word in the Anti-Kickback statute.[33]

As we explained in *Sanofi-Aventis,* an "offer" is a "promise to do … some specified thing in the future" or the "act … of presenting something for acceptance."[34] Or as the Restatement says: "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[35] "[I]n most cases the offer will be a promise," and so "an examination of the requirements of an offer necessarily includes an examination of what constitutes a legally sufficient promise."[36] "The chief requirement is that the promise must be sufficiently certain in its terms to enable the court to understand what action or forbearance the promisor is

---

[31]    *Sanofi-Aventis*, 711 S.W.3d at 739.

[32]    Real Parties included screenshots from several of the websites in their opposition briefing.

[33]    *Sanofi-Aventis*, 711 S.W.3d at 739–40.

[34]    *Id.* at 740 (quoting *Offer*, BLACK'S LAW DICTIONARY (12th ed. 2024)).

[35]    RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981).

[36]    1 WILLISTON ON CONTRACTS § 4:7 (4th ed.).

manifesting to undertake."[37]

AstraZeneca's websites do not qualify. They do not convey an unlawful "offer" for a kickback because they make no binding promise to do so. Nor can a person who visits the websites have an enforceable expectation to receive the services from AstraZeneca as a result. At most, the websites represent a "general invitation to apply for some of the challenged nurse services."[38]

The third basis on which Real Parties relied to establish venue in Harrison County—the brochure that Kristin Burgess found at a clinic—is equally insufficient. The supplement that Real Parties filed, including Burgess's attached declaration, stressed that the brochure contained a QR code that links to AstraZeneca's myaccess360.com website portal, where AstraZeneca lists the same nursing and reimbursement support services that form the basis of the alleged kickback schemes. Our analysis immediately above addressing Real Parties' website ground applies equally here.

In their briefing in this Court, Real Parties take a different approach to the brochure. Rather than focus on the QR code and website, they focus on the brochure itself, arguing that AstraZeneca distributed in Harrison County "*physical* product brochures that advertised the Free Nurse and Support Services programs and invited applications for these services." But the physical nature of the brochure makes no difference to its contents, which refers readers to the information on the websites. And like the websites, AstraZeneca made no offer for a kickback.[39]

---

[37] *Id.*

[38] *Sanofi-Aventis*, 711 S.W.3d at 740–41.

[39] Real Parties argue that AstraZeneca waived its argument that the websites do not connote offers within the meaning of the THFPA during the hearing on the transfer motion, but AstraZeneca quite clearly contested that the websites are offers. And in any event, as AstraZeneca points out, "our preservation rules recognize that parties may waive *issues*, not *arguments*." *Montelongo v. Abrea*, 622 S.W.3d 290, 299 n.10 (Tex. 2021). AstraZeneca has always disputed

We hold that Real Parties failed to present prima facie proof that any part of the alleged unlawful acts occurred in Harrison County.[40]

## III. Laches does not bar the venue transfer

Real Parties argue that mandamus relief is nevertheless barred by laches, given AstraZeneca's lengthy, unexplained delay in filing the petition.[41] But laches requires a showing of prejudice.[42] Real Parties argue that they would be prejudiced if venue is moved to Travis County because (1) trial in Travis County would disrupt the practices of four of their experts based around Harrison County, (2) lodging would be more expensive for two members of the trial team, who are in Harrison County, and (3) trial would be significantly delayed in Travis County. None of these facts show prejudice from the laches itself, because they flow from the *fact of transfer* not the *delay in seeking* it. The Texas Supreme Court applied this same understanding in *In re Laibe Corporation*: "Jackson Drilling has not demonstrated a detrimental change in position between the time the motion for reconsideration was denied in the trial court and the filing of the mandamus petition in the court of appeals." 307 S.W.3d 314, 318 (Tex. 2010). Because the focus is on prejudice resulting *from the delay in filing the mandamus*, not on adverse consequences *if mandamus relief is warranted*, Real Parties' purported prejudice does not suffice.

Real Parties' purported prejudice is also speculative. They say it is "possible" that one or more of their experts would not be able to attend trial in Travis County and that it is "likely" that trial would be delayed in Travis County. But laches requires "an unreasonable delay which *has* worked injury to another person."[43] Nor

---

that venue is proper in Harrison County.

40    *See* TEX. HUM. RES. CODE § 36.052(d).

41    *See In re Am. Airlines, Inc.*, 634 S.W.3d 38, 42–43 (Tex. 2021).

42    *See In re Oceanografia, S.A. de C.V.*, 494 S.W.3d 728, 731 (Tex. 2016).

43    *Gulf, C. & S.F. Ry. Co. v. McBride*, 322 S.W.2d 492, 500 (Tex. 1958) (emphasis added).

have Real Parties attempted to show that their experts would incur additional expenses that they would not have incurred if trial is in Harrison County.

There is also no dispute that AstraZeneca filed its mandamus "before … the 90th day before the date the trial starts."[44] Real Parties contend that AstraZeneca's 20-month delay in filing its petition disqualifies it from invoking § 15.0642 because the statute does not "create[] a license for the defendant to 'slumber on its rights' until the statutory deadline." But if Real Parties believe the statute's plain language should not apply when a litigant waits to file a mandamus until after trial has been reset several times, as happened here, then that is a concern more appropriately addressed to the Legislature, not us.

## CONCLUSION

We conditionally grant mandamus relief and direct the trial court to vacate its venue order and transfer the case to Travis County. Our writ will issue only if the trial court fails to comply.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[44] TEX. CIV. PRAC. & REM. CODE § 15.0642(1).